Good afternoon, Your Honors. Thank you very much for the opportunity to be heard. In this particular case, as I've had an opportunity to reflect on it, it comes to mind that if this were a case of little Jimmy stole little Susie's pencil, or something to that effect, that perhaps these procedures as outlined at ABOR for the Arizona State Board of Regents would not have been possible. In a case where one young student, female, alleges that another male student who is a classmate in her class has sexually assaulted her, and there is a peremptory finding, only after listening to the girl give her statement, and then ask the person to respond. That in those circumstances, a finding that that student, the male, is now guilty of sexual assault or rape, which is a class 2 felony in this state, carrying a term of 7 to 21 years. This type of proceeding is not only inappropriate, it is an atrocity. So why didn't you make that argument to the state court? In the original proceedings that we had, with respect to the two, are you referring to the two individuals? Well, I'm concerned about our Olson decision, and whether we can even evaluate your procedural due process claims when Olson says that you needed to appeal to the state court, at least on a possible reading of Olson. One of the things that we determined at the time was that the two individuals, which were the key and large substance of what the appellee in this case was arguing, was that they should have been included in that initial statement. A state filing should have been made. Oh no, I'm not asking about service of process. I'm asking why you didn't appeal the disciplinary ruling that the university made. Why you didn't appeal that to state court under the state law provisions that allow for appeal of an administrative agency decision. We felt that under the circumstances that Section 1983 was more appropriate under the circumstances, given the nature of the proceeding, and given the nature of one of the problems that we've run into, and we've even run into at the federal level, is that a lot of the judges are associated with ASU in some degree or form. But you could have tried to appeal to the state court if you lost. You could have brought your 1983 suit to us, perhaps. But our Olson decision says that in order to avoid a race judicata determination, you need to at least try to use the state mechanisms for pressing your federal issues. And I don't understand how you've really done that here. Well, in this case, as I said, we elected to file in federal court whether this court... But that's not the issue. I don't know if the microphone is picking up over here. Can you hear me? I don't know if we need to raise it. I had trouble hearing Judge Friedland. And I know we have video going on, so if... Are they working properly? Yes, ma'am. We can hear you. Okay. I guess over the video feed, I'm getting a message that we can't hear. Okay. Thank you. And I'll give you a couple minutes. That's fine. I think you might be missing the issue here. It's not a matter of whether you elected. It's a matter of whether you were required under our law to appeal the final decision of the university, which did not go in the favor of your client, through a couple of avenues. One, administratively or directly to the state of Arizona. You're saying you chose not to. It's not a matter of choice. It looks like because you didn't, you may have waived your ability to come to federal court. There's a decision directly on point, it seems like, or at least we're giving you an opportunity here to tell us why we don't follow the Olson v. Morris decision. I concede that that is a possible problem. I'm not saying that this case is not fraught with some legal problems. It might be a fatal problem. Possibly. Possibly. Do you have any argument that Olson doesn't control here? Well, I mean, what I can tell you is how I've evaluated the case. At the time, I was quite sick, and I didn't actually do most of this myself. That's true. I was under six weeks' recoverment, and I didn't want to even go into that today. But that's the reality. I was out for eight weeks. I should not have been at that original hearing anyway. I had four incisions which were leaking. I'd only had my surgery two days before. And they still denied our motion to continue. So under pain medication and without these things healing, this happened. So in that respect, how this case proceeded after that, I was out of the picture for a long time. Six weeks' recovery, including a week in the hospital. You didn't, I mean, that's outside the record, but you didn't even, there's nowhere in the record that indicates that, or you could have maybe gone to the university when you got the final decision and said, can I have another opportunity? I'd like to appeal for a couple of reasons, including that one. And you didn't do that. And unfortunately, it looks like under our law, there was an adequate process available to you that you didn't pursue on behalf of your client. And I'm struggling a little bit to figure out how we get around that. And I understand. I do understand your concerns. And I guess my argument would be more in lines with equity and what I think is equitable here. And that's the reality. This court has the opportunity to review it de novo. I'm not sure we do. What is your authority that we would be able to review it based on your equitable argument or de novo? Well, in keeping with the equitable estoppel arguments that are associated and incorporated in our first brief as well as our reply brief, I think under the circumstances, the final decision theoretically would not have been at the point that we had the hearing. The final decision would have been at the time that Mr. Mater requested that Mr. Quadi, in this case, appear to meet with him where I was supposed to appear as well to get a final determination on the matter. In that instance, when I contacted him to make the meeting, he declined to have the meeting after that and then sua sponte created his own decision, a final decision. How do we know that a state court would not have required them to try again or to give you more process? I can't say. I mean, I'm not going to make up something and say that I have a definitive answer for that. Did the court give you any kind of notice that it was going to turn this somehow into a motion for summary judgment instead of a motion to dismiss under Rule 12? So far as I know, no, they did not. Why did you join your opponent in treating this case with a whole lot of external evidence, exhibits, when it's a simple motion to dismiss for failure to state a claim? How did this get in the shape it's in? One of the reasons I think is because there are a lot of things that were simply kept off the record. And what I mean by that is with regard to the lack of due process with respect to the administrative hearing itself. For example, in the briefs that you have, you have been given basically my response at the conclusion of the so-called hearing. I think Judge Levy is asking why that is even before us. Why you didn't object to taking judicial notice of the hearing report. I don't see any objection to the granting of judicial notice of some of these documents that would not ordinarily be in the record in a motion to dismiss. So if I'm understanding the question correctly, why was all this extraneous evidence added? Why are we asked to review this case on this record when it started out as a motion to dismiss a complaint for failure to state a claim? And our law is pretty clear that the facts of the case are whatever is pleaded. We don't care what happened in the real world. If a person can't state a claim, they can't get in the front door. Justice, I'm sorry, go ahead. What do you think we should be reviewing? I think you should be reviewing the motion to dismiss. I think it should be reversed. And what do we do with all these exhibits? Read them. You say read them? Yeah. And based on reading the exhibits, we decide whether or not your complaint states a claim? That's a good question, Justice, and I know I'm going over my time, but I'll briefly answer your question. The question is related to I think the claim really is or the inquiry as to whether there is a claim upon which anyone can reasonably apprehend that there is some substance to the complaint, correct? Right. So in this instance, when we filed our complaint, I think it's replete with evidence that, yes, this does make a viable complaint. If we got carried away on both sides in terms of submitting exhibits, and I admit that the Attorney General's exhibit list is quite thick, leaving that all aside and just on the face of the pleadings, we have made a federal constitutional challenge to the procedural system that was applied in this case at the ASU level. And I think that that whole process is, in my opinion, is unconstitutional and does not provide any due process whatsoever for any student. But I know I've gone over my time. Thank you. I'll give you a minute or two for rebuttal. Thank you. Mr. Goodwin. Thank you, and good afternoon, members of the Court. My name is Michael Goodwin. I represent the defendants in the action, the Arizona Board of Regents, Michael Mader and Gregory Castle. I'd like to speak first about claim preclusion, focus on that initially. I do want to address Judge Levy's concern about the scope of the record, but first on claim preclusion. The issue here is whether the university's administrative decision is entitled to preclusive effect. The district court concluded that it was. The district court said that the – well, on that basis, the district court dismissed the plaintiff's federal claims under Section 1983 and Title IX based on raised judicata, and the district court got it right. The – by statute – Mr. Quaid's due process allegations are fairly serious here, Mr. Goodwin, so does that bear on our determination of whether claim preclusion can even apply to this case? I mean, is it just a – does it take it beyond the procedural sort of review? No, because he had the opportunity to raise all of those procedural arguments in the state court, in the state process. The process – But one of his arguments or one of the requirements in one of his arguments is an adequate opportunity to litigate. He's alleging, I think, in his complaint that he was denied an opportunity to have a hearing. It seems like we have to take him at his word because that he wasn't able to put on the witness that he wanted. Do we not just look at that and say, was that an adequate process? They had a hearing, and they walked out of it, and that's in the complaint. First of all, you look at the procedures that were available. They were very extensive. There's extensive pre-hearing process. There's extensive – there's an extensive hearing in itself, and then there's post-hearing process. And in this case, there was a hearing. It got underway. It wasn't going the way that Mr. Quaid and his attorney liked, and they decided to leave the hearing, and the result was a final administrative decision under Arizona law. There are lots of cases that say this. Under Arizona law, the failure to appeal an administrative decision is final and raised judicata. The Olson case is directly on point, we believe, and the Olson case cited to Gilbert versus the Board of Medical Examiners. So that principle is well established. Well, now, the question is not whether we give some preclusive effect to a judgment of a court. The question is, do we give preclusive effect to the administrative proceeding? You agree with that much? Do you agree the administrative proceeding is as far as you got? Yes, there was no court judgment. And our case says that – the Olson case – that our ability or we should give preclusive effect to the administrative decision if it was fair and you had an opportunity to present your case, right? Correct. So we have to look at the administrative procedure and decide whether or not that was fair under the literal words of the Ninth Circuit opinion. Would you agree with that? I do agree. You may have to make a determination of fairness. And the allegations in this complaint are that this plaintiff in this case was told, your lawyer can be heard or you can be heard, but both of you can't be heard. Now, you have to defend that as fair, do you not? What I have to defend is that he had the opportunity to challenge that, not only by making argument to the hearing board on rehearing and to the Arizona Superior Court on judicial review, if he still was not satisfied with the result. So you think we should hold that he had to go through the charade of being shut out and get somebody else to correct the administrative body and say, yeah, you and your lawyer can both be heard, not one or the other. But that's what this complaint says, does it not? Well, I respectfully wouldn't call that a charade. I would say if that's an error, then it's an error that could be corrected by Superior Court. Superior Court regularly reviews administrative decisions of state agencies for constitutional errors. And if there's a constitutional error, the Superior Court is there to correct that. We've cited cases in our brief. One that comes to mind is Webb versus the Arizona Board of Medical Examiners where they reversed an agency decision because of a perceived due process violation in the administrative process. You understand precisely what I'm asking. We're called upon to give preclusive effect to an administrative decision, and our case says we can do that if it was fair and an adequate opportunity to present the case. And we're faced with an allegation that we have to take as true, that this plaintiff was told, one of you can be heard but not both of you. That is, you or your lawyer, but not both. Right? Right. That's what it alleges. Now we have to say that that administrative procedure has preclusive effect because it was fair. What I'm saying is that federal courts, when they're deciding whether to give preclusive effect, they review the administrative process that was available. Not at particular decisions, not a single evidentiary ruling, but they look at the process as a whole. And that process includes the ability to appeal in your argument, right? It includes the ability, several layers of review of that particular decision. And I don't even believe that was the decision that was upsetting at the time. The decision that prompted the walkout of the hearing had to do with a certain witness was excluded from testifying. Right. I have one more concern, and I want to just share it briefly with you. The district court never ruled on the motion to dismiss. It dismissed this case because of issue preclusion. It did not rule on whether or not this complaint states a claim. Is that true? That's correct. We did make arguments that were alternative arguments, and the court found it unnecessary to address the other arguments because it dismissed on res judicata. Typically that would all be done in a motion for a summary judgment, right? Rather than to say this complaint doesn't state a claim, and we get to prove or present our evidence of issue preclusion. Well, respectfully, Your Honor, I disagree a little bit on that point. The 12B6 can be used for failure to state a claim. It can also be used to raise an affirmative defense. Our motion was based on 12B6, and the case law from this court says that other matters that are not attached to the complaint can nevertheless be considered on a motion to dismiss if there are matters, in this case, matters that the court can take judicial notice of. And so, in this case, really, every time res judicata is raised, it's necessary to look at what happened in some other proceeding, whether it's a decision of another federal court, a decision of a state court, in this case, a decision of an administrative body. That part of the record, that's not presenting facts. Those are matters that are matters of public record. The courts can and regularly do take judicial notice of them. They were submitted in connection with our motion. No objection was made. The district judge, Judge Tucci, took judicial notice, so they're part of the record. They're appropriate for consideration on our motion. They did not convert the motion to a summary judgment motion. Anything else? Okay, thank you. I would ask that you affirm the judgment of the district court. Thanks. Thank you. All right, Mr. Palmisano. Palmisano, thank you. Justice Levy, I think you hit it square on the head. I think the real problem that I see here is based on the fact that Olson requires that if there be an administrative decision, one made by a state body, that that administrative decision must pass muster, to some degree, to equate a state court judgment. Now, in a situation where the process itself does not permit, even remotely permit, and in the exhibits you will find the student body language. I challenge you, if you look at it, to see where it is not completely inconsistent in terms of in different sections explaining that there are different things that a person may be entitled to, including cross-examining witnesses or presenting witnesses. But Olson says that if you have constitutional objections to the administrative body's procedures, you can appeal them through the state process for appealing an administrative decision. You didn't do that here. So do you have any evidence that the state court would have disagreed with you? I mean, maybe the state court would have agreed with you and made the university change its procedures. They may have. It's possible. I concede that. But what I'm submitting is, again, given the nature of the case, remember, this individual has now been found guilty of sexual assault. And the determination was that he would eventually have to carry this on his record. Guilty of sexual assault. I mean, you're not talking about criminal proceedings. You're talking about that he violated the code of conduct for students. By sexual assault or rape. And this was investigated by the police, as your honors know. And they came to a completely opposite determination. Under a different definition, though. This was the campus's definition of a code of conduct, not a criminal law about rape, right? Well, again, we get to that question of what, in fact, is a fair constitutional proceeding. And whether someone, I mean, let's face it. No, it's true. They can't put them in prison for 7 to 21 years. But anyone who's a student out there carrying an expelled, which was one of the considerations. He was not expelled, though, right? He was suspended and removed from school for sexual assault. Not for consumption of alcohol or pot, which they both engaged in. For a period of days, is that correct? No, they had him physically removed from the campus. What was the, was he terminated? I thought he was suspended. No, Mader erased all his records and ordered him off campus and not to come back on campus again. But he, I just want to make sure you don't equate a verdict of guilty of some sexual assault with the same thing as an administrative proceeding. I'm not equating them. But what I'm saying is, in the real world, if somebody is looking for a job or trying to go to a school, and you have on your record you were suspended from another school for sexual assault, does it get any worse than that? It's very serious. And that's why I, just to have a pause, why he would not have, or his lawyer would not have, exhausted every administrative remedy possible to avoid that. And that's where we are, at least from my perspective. As Justice Levy pointed out, we weren't given the opportunity to present evidence. Well, that's what we're going to decide. Thank you very much for your time. Thank you very much, Your Honors, for hearing us this afternoon. Thank you both for your oral arguments today. May we be excused? You may be excused. Thank you. Thank you.
judges: Leavy, Murguia, Friedland